Laubie, J.
This cause comes into this court by appeal, and was heard upon a demurrer to the petition.
It is an action brought for the purpose of determining priority of liens, and enforcing the lien of a judgment on the part of the plaintiff against George E. Medill, and selling the coal underlying a farm in this county.
The petition alleges the obtaining of the judgment during the April term, 1888, in Franklin county, Ohio, upon which an execution was issued June 19, 1888, to the sheriff of this ■county, and by him levied on the land June 21, 1888, and which was entered by him and set out in full on the foreign execution docket on the same day. The sheriff thereupon returned the execution, without further proceedings, by order of the plaintiff, the execution creditor.
• At the time of the levy there was a mortgage on the land ■of |6,700, and on November 2, 1888, the mortgagee released the coal underlying the land from the lien of the mortgage; and on March 30, 1891, the surface and all the land but the coal was sold at judicial sale and the proceeds applied to the payment of the mortgage and other liens superior to plain *414 tiff’s, and exhausted. On December 19, 1888, the execution debtor sold the coal at private sale to one Hahn, and, a few days thereafter Hahn sold the same to the defendant,. The Wheeling, Lake Erie & Pittsburgh Coal Co.
By reason of this sale of the coal, and of other liens thereon, the plaintiff, on September 3, 1892, brought this proceeding to establish its lien as against the Coal Company and the other defendants, and for a sale of the coal, setting1 out all these facts in full. The coal company filed a general demurrer to the petition.
This is all that is necessary to state of the facts alleged in the petition, for the disposition of the questions before us.
The point made is. that the execution having been returned, under the orders of the plaintiff, without further proceedings, the levy created no lien upon the lands or the coal, and that to hold it a valid lien would be a fraud upon the purchasers; and to sustain this claim, counsel for the Coal Company rely upon Sturgeon v. Hull, assignee, et ah, 8 C. C. R. 269; in which it was held: “Where an ’execution is issued to a foreign county, with instructions to the officer that when real estate is levied upon it shall be returned after levy, and no further action had to enforce collection, a mortgage executed subsequently to the levy will have priority.’’
The court say, p. 276: “The statute, however, provides-what the officer must do when the levy is made. That is,, he must have the real estate appraised; and such appraisement must be returned forthwith to the clerk of the court from which the writ issued. It is then the duty of the officer to advertise the premises for sale. After the premises-are offered for sale, the officer is required to make due return of the writ with all his proceedings thereon.
“If the execution is returned and the property not sold, section 5405 provides: ‘Other executions may be issued to> sell the same. ’
*415 “It appears: First — That if the provisions of the statute are interfered with,and the officer is controlled by the creditor,no further action can be had under the levy. An execution is placed in the hands of an officer to enforce the execution of a judgment, and not merely to secure a lien. The statute directs what the officer shall do. If the creditor waives his right to proceed under the statute, he cannot then claim a priority over subsequent mortgagees.Í^In other words, he cannot use the execution laws to create a mortgage lien. ”
And on page 277, the court say:
“The Supreme Court of Alabama, in Alabama Gold Life Insurance Co. v. McCreary, 65 Ala. 127, held: ‘When an execution is placed in the hands of a sheriff with instructions not to sell until further orders, it is not in his hands for any effective purpose, and its lien is postponed to that of any subsequent execution creditor, while the older exeecution is thus kept dormant. The attempt to fasten and preserve a lien by'such method is a constructive fraud on creditors and subsequent purchasers,and postpones the supposed lien thereby attempted to be created, to the lien of any subsequent execution creditor, who establishes his lien while the older execution is kept dormant. ’ The views entertained are fully recognized in Freeman on Judgments, 206.”
The foregoing are the authorities relied upon in Sturgeon v. Hull, supra, for the holding in that case.
Questions of this character depend so largely, in their determination, upon the terms of the particular statute, that but little aid can be had from the decisions of other states. In many states judgments are not made liens upon lands at all. .And such seems to be the case in Alabama, as to lands in the county where the judgment is rendered. The lien, in such cases, seems to attach to the execution. Their code provides that the writ is a lien on the lands in the county from the time it is received by the sheriff, and continues as long as a writ is regularly issued and delivered to him without the lapse of an entire term. As^to lands in *416 another county, it provides that if a certified abstract of the judgment is filed and registered in the probate judge’s office of such other county, such judgment shall be a lien on the lands in such county for the period of ten years, and shall be notice thereof to all persons.
No lien can be obtained on lands in the county where the judgment was rendered except by the delivery of an execution to the sheriff, and under the holding in the case cited, Alabama Gold Life Ins. Co. v. McCreary, it lasts only long enough^for the sheriff to sell the land,
The very object and purpose of the statute, it seems to me, is defeated by such holding, and the judgment creditor cannot obtain a lien under the statute that he could not obtain without the statute. As to lands in other counties, as we have seen, the creditor, by filing the abstract of the judgment, as heretofore stated, may fasten a lien upon such lands for the period of ten years. Truly a peculiar state of affairs; and sufficient to show that the extent, duration and effect of judgment liens under our statutes cannot safely be determined by Alabama law.
The reference in Sturgeon v. Hull, assignee, supra, to Freeman on Judgments, I think may be a mistake. Neither at page 206, nor section 206, of that work, is the question noticed, and I do not find it discussed in the book. I think the reference intended must be Freeman on Executions, sec. 206. In that section, and in the chapter of which it is a part, the author treats of the lien of executions, but not of the lien of judgments. These are two separate and distinct things, and the law applicable to the one has little or no application to the other. The one relates almost exclusively to personal property, and the other to real property.
“At common law a fi. fa. was a lien upon the personal property of the defendant from its teste. This might be the first day of the term, and hence long anterior to the issue of the writ, and to the actual rendition of the judgment. ” Ibid,, sec. 199.
*417 “But as the object of the lien is to prevent the transfer of property liable to be taken under the writ, the general rule is, that the lien continues while the writ remains in force, so that the property may be taken and sold under it, and no longer.” Ibid., sec. 202. And in said sec. 206 it is stated that, “By the statute of 13 Elizabeth, 0. 5, executions taken out to hinder, delay or defraud creditors or others” are as against such persons, utterly void, and that “there is no lien while the writ is not being executed in good faith,’ etc.
And this doctrine, with respect to the lien of executions upon persona] property, when the writ is not being executed in good faith, has been enforced in this state. If there is unreasonable delay and bad faith, or the sheriff made but a paper levy, the lien may be lost. And the reference made by counsel to Acton v. Knowles, 14 Ohio St. 18, is of that character. There the writ was levied upon a stallion which was left in possession of the judgment debtor for eleven months, who farmed him out, and made a profit from his services for his own benefit under an arrangement with the sheriff. The doctrine applicable to the seizure of personal property, and its subsequent application to the satisfaction of the judgment,is essentially different from that in relation to lands. The seizure of personal property must be actual, and the possession retained in order to hold the lien; and the officer cannot hold possession-of it indefinitely, but must bring it to sale within a reasonable time; and the lien is lost if he relinquishes possession. “A levy upon chattels is a satisfaction while the levy remains in force, but only a sale of the lands under levy is a satisfaction.” Reynolds v. Rogers, 5 Ohio, 169.
We are not called upon to consider the question of the lien of executions upon personal property, but the effect of judgment liens upon land, how acquired, how enforced, and their extent and duration, as regulated by the statutes of this state.
*418 Section 5374 of the Rev. Stat., provides, “Lands and tenements, including vested interests therein, and permanent leasehold estates renewable forever, * * * * shall be subject to the payment of debts, and shall be liable to be taken on execution and sold as hereinafter provided,” and section 5375, provides, “Such lands and tenements, within.the county where the judgment is entered, shall be bound for the satisfaction thereof from the first day of the term at which judgment is rendered; but judgments by confession, ■and judgments rendered at the same term at which the action is commenced, shall bind such lands only from the day on which such judgments are rendered; and all other lands as well as goods and chattels of the debtor shall be bound from the time they are seized in execution.”
This is the only section of the statute which gives to judgments originating in the court of common pleas, in actions for money, a lien upon lands, and it provides, first, for liens upon lands within the county where the judgment is rendered ; and, secondly, for liens upon lands other than those, to-wit:°lands in other counties.
The rendition of the judgment makes it a lien upon, or binds, the lands in the county from the first day of the term.
Upon lands in another county it- makes the judgment a lien, or binds them, from the time the lands are seized in -execution. It does not make the execution a lien, it makes the judgment a lien in each instance. The reading of the -statute in effect is, the judgment shall bind the lands from the time of the rendition of the judgment, or when they are seized in execution.
In Davidson v. Root, 11 Ohio, Wood, J., says, p. 100: “ Judgment liens are of a purely legal character. * * * * Their creation, extension and continuance depend entirely upon statutory provisions. Their operation, as a part of the remedy to enforce the collection of a debt, is governed by the terms of the statute. That the lien may attach, it is certain, that, by the statute, the land must be in the county *419 where the judgment is rendered, at the time of its rendition; or, if in another county, there must be an actual levy.”
The statute then under consideration was in the very words of section 5575, Rev. Stat., quoted above, and Judge Wood speaks only of the judgment as the thing to which' the lien may, under the statute, attach, whether the lands lie in another county or not. The language of the statute that creates the lien is peculiar: “Such lands and tenements within the county where the judgment is entered, shall be bound for the satisfaction thereof from the first day of the term, * * * * and all other lands shall be bound * * * * from the time they are seized in execution;” and in the latter instance, in order to complete the sense, the words “for the satisfaction thereof” are to be implied after the words “shall be bound.”
It is true these words apply as well to goods and chattels, but the difference in the nature of the property, and in the requisites of a seizure in execution of personal and of real property, and in the effect thereof, call for the application of different principles in considering the effect of delay in the sale of property so seized.
The judgment, therefore, when execution under it is levied upon lands in another county, is a lien upon such lands,and to make the lien a matter of public record, and notice to all persons, section 1212, makes it the duty of the sheriff to enter in the foreign execution docket all foreign executions, from what court and county issued,the date and amount of the judgment, a full description of the land levied on, and his return on the writ.'
In Moon v. Rittenhouse, 15 O. St. 315, the court held that the lien of the judgment on lands in another county, secured under the statute by levy thereon, continued, with its priority, as against other lienholders, and on appeal, although instead of proceeding to sell under the writ, the judgment creditor *420 had it returned, and then brought a suit in equity for a sale of the property as a more adequate remedy, because of prior mortgage lien.
The statute in regard to appeals, provides that “the lien of|fhe opposite party on the real estate of said appellant, created by said judgment, shall not be, by said appeal, removed or vacated,” and the court held: “The language of this section seems clearly to express an intention that the statutory security which the creditor has acquired for the satisfaction of his judgment, should remain wholly unimpaired by the appeal, and no reason is perceived for discriminating between liens created by the rendition of judgment and those arising from seizure in execution,” and that
“As the levy of Emmitt was first made, his judgment thereby acquired a priority of lien” over other judgment creditors who subsequently levied on the lands.
This is substantially decisive of the question, because there is no exception in the statute which requires the sheriff after levy to proceed to appraise and sell. If that requirement is absolute, and the omission to do so, by direction of the execution creditor, a fraud on subsequent purchasers and creditors, the reason for such direction by such creditor is immaterial, and can create no exception, in the absence of actual fraud.
A levy upon lands may be a mere paper levy.
In Morgan v. Kinney, 38 Ohio St. 610, it was held:
“First — No entry by the sheriff upon real estate is necessary to constitute a valid levy thereon.
“Second- — -The levy of an execution from another county, when indorssed on the execution, and before entry thereof, as required by the act of 1860 (2 S. & C., 1402; Rev. Stat., sec. 1212), is complete.”
Lonwgorth, J., in the opinion, says: “Was this levy then a valid one? Clearly it was, unless under our statute the expression ‘seized in execution’ shall be construed as making an actual seizure of some kind essential.' In Gwynne *421 on Sheriffs, 308, the law is stated thus: No entry by the officer on real estate is necessary to constitute a levy. The officer may remain in his own office and not even go within view of the land. He need not seize upon any twig, turf, or other part thereof as symbolical of the whole. His indorsement upon the execution of a levy, will constitute one to all intents and purposes. ’ From the time that a valid levy is made, the land is in a legal sense seized in execution —that is, rendered liable for its satisfaction.”
From that moment the judgment, not the execution, becomes a lien upon the lands. How long does it continue? Section 5380 provides: “If execution on a judgment rendered in any court of record in this state, or a transcript of which has been filed as provided in section 5377, be not sued out within five years from the date of the judgment, or if five years intervene between the date of the last execution issued on such judgment and the time of sueing out another execution thereon, such judgment shall become dormant and shall cease to operate as a lien on the estate of the judgment debtor. ”
The statute makes no distinction between judgments that have become liens upon lands in the county where rendered, or in another county. All are alike covered by this section, and their liens continue for five years, and may be continued indefinitely for other five years by the issuing of executions within such periods.
If this section does not apply to the character of a case before us, where the execution was levied and the lien obtained upon lands in another county, then there is no limit to the duration of the lien, except as to other judgment creditors. Having once obtained the lien, unless there is some law to limit its duration, it becomes perpetual.
In Patton v. The Sheriff of Pickaway County, 2 Ohio, 398, the question came up as to liens under the act of 1824. Judge Hitchcock,in rendering the opinion, says, page 399:
*422 “The lien which is thus created, is by subsequent provisions of the statute regulated as to other bona fide judgment creditors: as to all the rest of the world it appears to be perpetual. ’ ’
And in Davidson v. Root, supra, Wood, J., p. 100, says: “The lien being given by express provision, although it is admitted as a part of the remedy, to be within the control of the legislature, must, nevertheless, remain until lost by the act of the judgment creditor, or taken away by subsequent legislation.”
In Free. onJudgm., sec. 383, it is said: “The lien of the judgment never becomes dormant until it expires by the limitation imposed by statute.”
But in our opinion, said section 5380, does apply to cases of this character; it is general, and applies to all judgments, and limits the duration of their liens to five years unless an execution be sued out as provided therein.
In Kelly v. Vincent, 8 Ohio St. 415, a judgment was taken in Geauga county, March 31, 1846, and execution issued to the sheriff of Cuyahoga county April 3, 1846, which did not go into the hands of the sheriff at all. On October 28, 1846,an alias fi. fa. was sent to Cuyahoga county and levied upon the lands of the judgment debtor, and returned without appraisal or further proceeding. On August 18, 1851, a vend, exp. was issued and sent to the attorneys ofthe plaintiff and returned by them without having been delivered to the sheriff. On March 12, 1855, an al. plu. vend. exp. was issued to the sheriff of Cuyahoga county, and by him returned with an appraisal of the lands levied on; and on April 24, 1855, the alias was issued upon which the land was sold.
Three executions were all that appeared upon the foreign execution docket in Cuyahoga county, to-wit: those of October 28, 1846; March 12, 1855, and April 24, 1855.
Sutliff, J., says: “The question presented to the court is whether five years intervened between the 28th day of October, 1846, the date of the writ which was levied on Kel *423 ley’s lands, ‘and. the time of suing out another writ of execution’ on said judgment. ”
There was no appraisal and no attempt to sell under the alias fi. fa. of October 28, 1846, but the court assum'ed that the levy made the judgment a lien on the land from the date •of such levy, and which still existed if an execution was sued •out within five years from the date of such alias fi. fa.
But the court held that the judgment was dormant at the •time of the issuing of the vendi. exp. of April 24, 1855, and upon which the lands were sold, because the suing out and •delivering to the plaintiff’s attorney the vendi. exp. of August 18, 1851, was not a suing out an execution within the meaning of the statute, as it had not been delivered to the ■sheriff, and therefore more than five years had intervened -between the date of the last execution previously issued, to-•wit: the execution of October 28, 1846, and the time of suing out the next writ of execution. And the court gave as a reason for such holding, p. 422, that “The reasonableness of this interpretation of the provision of the statute is well illustrated by this case. By reason of the vendi. exp. not having been delivered to the sheriff, no evidence was afforded to those interested in ascertaining the continuance of the judgment lien aquired by the levy of the execution of Ociober, 1846, until the vendi. exp. of March 12, 1855, was ■delivered to the sheriff. ’ ’
There is another limitation, with reference to bona fide judgment creditors. Sec. 5415, Rev. Stat., provides:
“No judgment on which execution is not issued and levied before the expiration of one year next after its rendition, shall operate as a lien on the estate of a debtor to the prejudice of any other bona fide judgment creditor; * * * * and in computing such period of one year, the time covered by an appeal of the case, or by an injunction against the execution, or by proceedings in error, or by a vacancy in the office of sheriff or coroner, or by the inability of such officers, shall be excluded.’’
*424 In this way a judgment creditor may lose the benefit of his lien, but not by neglecting to sell after a levy. He levies to maintain the lien, and the lien remains for five years, and it cannot be taken away from him except by another bona fide creditor, and then only under the provisions of this section. The provisions of sections 5389 and 5390, Rev. Stat., which require the officer, after levy, to appraise, advertise and sell the lands, applies equally to all cases of levies upon lands whether in the county where the judgment was rendered or in another county, and if the lien is lost by delay after levy in the one case, it is lost also in the other,, and it presents a new, if not a startling, proposition. But sec. 5415, applies only between judgment creditors, and we need not decide what effect a delay in the sale would have between them. Indeed, sec. 5391, would strip the question of all force, if two thirds of the appraised value of the land levied on equaled the amount of the judgment and costs. This case is between a judgment creditor and a subsequent purchaser, and as against him this lien exists for five years, and he buys at his peril. Bank v. Baldwin, 3 Ohio, 65; Myers et al. v Hewett et al., 16 Ohio, 449; Fitch v. Mendenhall, 17 Ohio, 578.
Sec. 5415 requires the execution not only to be issued, but levied; but sec. 5380 only requires the execution to be issued; and as against all the world but other judgment creditors, a judgment creditor may preserve his lien on the lands in the county where the judgment was entered almost indefinitey, by merely suing out execution within every period of five years, with directions to the sheriff to return the same without levy. If he may do this without incurring the imputation of fraud, how does it alter the case that the sheriff may have made a levy upon the lands? Upon what principle does the failure to proceed under the levy make that fraudulent which would be legal if no levy had been made ? Or, is the *425 lien given by the statute conditioned upon not levying the executions issued to keep it alive? And if such creditor may almost indefinitely, by the issuing and return of executions, preserve the lien of his judgment on the lands in the county where the judgment was entered,' without fraud upon subsequent purchasers or mortgagees, it would not seem to be consistent therewith to hold that where he proceeded under the statute to obtain a lien upon lands in another county, it would be a fraud upon such persons if he did not at once follow up the levy by a sale.
The suing out an execution is the very means provided by the statute for the extension of the lien for another five years, and as that compels a delivery of the writ to the sheriff, if the officer must then proceed to appraise and sell, how is the judgment creditor to obtain a lien for five years longer? If such is the law, then the very means by which only such creditor can obtain such extension, suffices to defeat it. It cannnot be said that it was designed to apply only to cases where a sale could not be had at law, because there is no such limitation in the act. It is as general as the provision for the lien of the judgment.for the first five years, and must receive the same construction in this regard.
And generally, we think, the intention of the statute is to give to a judgment creditor the same lien upon lands in another county after levy, with the same incidents and right of extension, that it gives to him upon lands in the county where the judgment was rendered. We see no cause for discrimination between the two.
Of course, all judgments and levies are open to attack for fraud. If a levy is made or held with intent to hinder, delay or defraud other creditors, such judgment is liable to attack, but.the fraud must be proved. It must be an actual fraud, and not one deduced simply from the fact that the judgment creditor is lenient towards his debtor, and does not force the sale of the property.
J. M. Ooolc and B. Q-. Richards, for defendants.
A. H. Battin and J. A. B. Wood, for plaintiff.
The demurrer is not well taken for another reason. Hahn bought the minerals December 19, 1888, and but little more than a month after the minerals had been released from the-lien of the mortgage, and at no time until after the prior-judgment liens were satisfied by a sale of the surface under the mortgage in March, 1891, could the plaintiff have sold the minerals upon execution. On account of these prior subsisting liens, which a sale upon plaintiff’s execution would not discharge, or in any way injuriously affect, a beneficial sale could not be made, and would be contrary to law. The plaintiff would be required to go into a court of equity, making all the prior lienholders parties, and there obtain a marshaling of the liens, and order to sell. Moore v, Rittenhouse, supra; Dempsey v. Bush, 18 Ohio St. 882.
The rights of the parties are to be determined as they existed at the time of the purchase by Hahn; and as to him, and his grantee, the plaintiff could commence a proceeding-like this at any period while its judgment lien was in force, and the delay would not prejudice its rights against the defendants, nor increase their’s against the plaintiff. The demurrer must be overruled.